United States Court of Appeals
Fifth Circuit

**F I L E D**

June 22, 2007

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 06-40412

UNITED STATES OF AMERICA,

Plaintiff -Appellee,

versus

NICHOLAS MITSAKOS

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Texas
(05-CR-03)

Before JOLLY, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Nicholas Mitsakos appeals his conviction for securities, wire, and mail fraud. We affirm.

Ron Lee Moss, Jr. ("Moss") established Petromerica in September 1998. The company's focus was on re-entering and re-completing wells that had previously been productive in Oklahoma, Kansas, and Texas. Nicholas Mitsakos ("Mitsakos") became the Chief Executive Officer for Petromerica in approximately February 2000 when Moss agreed to turn the company over to him.

Mitsakos controlled the company's bank accounts. Mitsakos and his employees contacted

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

individuals and solicited them to invest funds with Petromerica to purchase fractional interests in the Savannah three-well project. These investments were the basis of the current indictment.

On January 12, 2005, a federal grand jury returned a 24-count indictment against Mitsakos. Count One charged Mitsakos with Securities Fraud, in violation of 15 U.S.C. § 77q(a). Count Two charged Mitsakos with Wire Fraud, in violation of 18 U.S.C. § 1343. Counts Three through Twenty-Four charged Mitsakos with Mail Fraud, in violation of 18 U.S.C. § 1341. On January 20, 2005, Mitsakos pleaded not guilty. On July 21, 2005, after a seven-day trial, the jury found Mitsakos guilty of all twenty-four counts charged in the indictment. Mitsakos was sentenced to Forty-One months' imprisonment on each count to run concurrently, and he appeals.

Mitsakos moved for a judgment of acquittal at the close of the evidence. A motion for a judgment of acquittal challenges the sufficiency of the evidence, and this court reviews the denial of such a motion de novo. *United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998). In doing so, we consider the evidence, all reasonable inferences drawn from it, and all credibility determinations in the light most favorable to the Government, and we affirm if a reasonable jury could find the offense's essential elements beyond a reasonable doubt. *See United States v. Mulderig*, 120 F.3d 534, 546 (5th Cir. 1997).

Mitsakos argues that the government failed to show beyond a reasonable doubt that he had the specific intent to defraud the investors of Petromerica. Evidence of intent necessary to support the verdict can be shown by either direct or circumstantial evidence. *See, e.g., id.* at 546-47.

Here, there was ample evidence of intent. Mitsakos told many investors that the investment was a low-risk proposition and promised to roll their investment into a successful project if the Savannah project was not successful. Mitsakos told investor David Evinger that the project was

2

low-risk three different times in the same document. Mitsakos told investor Robin Waters ("Waters") that his funds would be deposited into an escrow account. Mitsakos spent less than ten percent of all money collected from Savannah investors on any oil and gas wells. None of the money he collected for the Savannah wells was actually spent on those wells. Mitsakos did not roll any of the Savannah investors' interests over into a successful project as he had promised to do. Mitsakos deposited Waters' funds into Petromerica's general operating account and did not have a valid lease on the land where the Savannah project was located.

Mitsakos spent all of the funds in the general operating account for Petromerica's administrative expenses and for his own personal expenses. Sandy "Guy" Burnette, a lawyer for Petromerica, told Mitsakos that Mitsakos could not use investor funds to pay these expenses. Despite that warning, Mitsakos wrote checks totaling over $8,000 to Richard Rivera ("Rivera") reflecting that they were payment for "contract labor." At no time did Rivera work for Petromerica; the payments were actually made to pay Rivera for Moss's bar tab at The Men's Club, a business venture, and to pay rent on a corporate apartment. When he issued the checks, Mitsakos knew that Rivera never worked for Petromerica, and he knew the actual purpose of the payments.

Burnette testified that a condition of working for Mitsakos was that Burnette be allowed to personally review Petromerica's financial records. Although Mitsakos blames his actions on his lack of bookkeeping experience, Mitsakos agreed to this condition but never gave Burnette the records. Burnette also convinced Mitsakos to hire a comptroller, Calvin Brooks, a banker with Bank of America. However, Mitsakos never gave Brooks access to Petromerica's books and records.

Considering this and other evidence contained in the record, and all reasonable inferences drawn from it and viewing all credibility determinations in the light most favorable to the

3

Government, we affirm the jury's verdict.

Mitsakos also challenges the district court's *Allen* charge. A supplemental instruction that urges members of a deadlocked jury to forego their differences is known as an "*Allen* charge." *United States v. Fields*, 483 F.3d 313, 338-39 (5th Cir. 2007). Where a defendant does not object to the use of such charge, review is for plain error. *United States v. Hitt*, 473 F.3d 146, 153 (5th Cir. 2006). Mitsakos did not object to the district court's *Allen* charge. Thus, the forfeited error itself must be "obvious," "clear," or "readily apparent," and affect the defendant's "substantial rights." *United States v. Clayton*, 172 F.3d 347, 351 (5th Cir. 1999) (citing *Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1424 (5th Cir. 1996) (en banc)). District courts have broad discretion in deciding whether to give an *Allen* charge when a jury indicates that it has reached an impasse. *Hitt*, 473 F.3d at 153. We permit district courts to give modified versions of the *Allen* charge, "so long as the circumstances under which the district court gives the instruction are not coercive, and the content of the charge is not prejudicial." *Id*.

After a day of deliberations that included sending the court two different notes, the jury sent a note at 5:45 p.m. stating that they were "at an impasse and unable to come to a decision. Please advise." The district court prepared a modified *Allen* charge approved by this Court in the Fifth Circuit Pattern Jury Instructions. *See* Fifth Circuit Pattern Jury Instructions (Criminal) § 1.45 (2001). The district court also asked the parties whether the jury should be asked to continue deliberating that evening or be instructed to go home and return the following morning. Mitsakos requested that the jury be sent home and asked to begin their "deliberations anew" in the morning. Following Mitsakos' request, the district court read the modified *Allen* charge and sent the jury home. The next day, the jury convicted Mitsakos. At Mitsakos' request, the district court polled the jury and each member

4

confirmed that the verdict was theirs.

In *Lowenfield v. Phelps*, 484 U.S. 231, 237 (1988), the Supreme Court held that the potential coercive effect of a charge to a deadlocked jury must be evaluated in its context and under all the circumstances. Mitsakos argues that when reviewed in its context and under all the circumstances, the modified *Allen* charge was impermissibly coercive. Specifically, Mitsakos points to the fact that the district court did not give the jury additional instructions and did not question the jury before issuing the charge.

There is nothing in the record that supports a finding of coercion. The jury deliberated for several hours after receiving the *Allen* charge. Furthermore, Mitsakos requested the court to send the jury home for the day after the court issued the charge. There is no requirement that the court question the jury before issuing an *Allen* charge. Finding no error, plain or otherwise, we affirm. The judgment of the district court is AFFIRMED.